FERNANDO SIERRA BERDECÍA, SECRETARY OF LABOR OF THE COMMONWEALTH OF PUERTO RICO, ETC., Plaintiff and Appellant, *v.* BORINQUEN PASTEURIZER, INC., Defendant and Appellee.

No. 12185. Decided September 21, 1931.

*Domingo Candelario* and *Manuel Janer Mendía* for appellant. *Charles H. Juliá* for appellee. *Beverley, Castro* and *Rodríguez Lebrón* for Coca Cola Bottling Company of Puerto Rico, Inc., as amicus curiae.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, and Mr. Justice Hernández Matos and Mr. Justice Santana Becerra.

PER CURIAM.

The claim for unpaid wages involved in this case covers the years 1951, 1952, and 1953. The question for decision

is whether, in accordance with the facts of this case, the work performed by the plaintiff laborers for the defendant is governed, as to the wage rate, by Mandatory Decree No. 5, relative to bottled soft drinks and beer, or by No. 16, relative to wholesale trade.

Decree No. 5, approved January 12, 1944, defines the regulated industry as follows:

"The Beer and Soft-drink Industry, or any one of them, comprises, but not by way of limitation, all the acts, processes, operations or services that may be necessary, incidental or related to the preparation, production, distribution or disposition, by the manufacturer, of beer of any kind, with or without alcohol, or of any soft-drink prepared with carbonated water as a basis."

A few years later, on August 24, 1949, the Minimum Wage Board issued Decree No. 16, fixing minimum wages and other working conditions for employees in the wholesale trade. The following definitions are set out in Art. I:

"A. *Wholesale Trade* embraces any establishment, enterprise or agency engaged in the sale of merchandise to retailers, commercial establishments or to other wholesalers. It includes wholesalers, agents, brokers, commission agents, and sales branches of manufacturing enterprises. It covers the processes of buying, selling, warehousing, transporting and any other activity connected therewith. It shall not include, however, establishments having two or less employees partially engaged in any of the processes listed in this definition. These establishments shall be subject to the provisions of the mandatory order applicable to the activity carried on jointly with wholesale trade. Neither does it embrace any subdivision of an establishment whose employees are totally engaged in retail trade.

"B. *Sales Branch of a Manufacturing Enterprise* shall mean a subsidiary establishment of a manufacturing enterprise which does not operate in the same building where the manufacturing processes are performed and which is engaged in the distribution at wholesale of goods produced by said manufacturing enterprise."

On September 14, 1950, the Department of Labor issued an interpretative memorandum (No. 8) of Decree No. 16, setting forth therein the criterion of the department for determining what is meant by a branch of a manufacturing enterprise.

"We are of the opinion that, in order to determine whether or not there exists a 'Sales Branch of a Manufacturing Enterprise' (Art. 1-A, *supra*), the place where the product is stored is not decisive, although it may be an important factor to be considered in doubtful cases. In our opinion, the controlling factor is the place and the manner in which the sales are transacted or the product distributed, for an industrialist may store his product in the same establishment where it is manufactured and set up a completely separate commercial establishment to carry out the wholesale transactions of the product. Or he may store it in other premises without having an organized 'commercial establishment' for the sale or distribution of the product. That it is necessary that there exist an organized 'commercial establishment' for the wholesale or distribution of the product, appears evidently from the explanation of its intention given by the Board in its Findings of Fact and Opinion, *supra*—the decree does not cover the manufacturing process 'up to the point when [the industrialist] delivers his product to the dealer or entity which will sell the same.' Since the 'delivery' of his product by the industrialist to the dealer who is to sell it necessarily entails the previous sale of the product in the regular course of business, Mandatory Decree No. 16 can not be applied to such sale. Hence, it is necessary to distinguish between the sales made by an industrialist to wholesalers or retailers in order to place his product in the market for consumption, which sales are not covered by the decree, and those which an industrialist may transact as merchant, that is, in a branch establishment of his manufacturing enterprise, the organization of which is different from that of the latter and which is devoted to the sale or distribution at wholesale of his product. The former are 'industrial sales' and the latter 'commercial sales.'

"The easiest way of distinguishing between one class of sales and other classes consists in determining whether or not the sales are transacted in a commercial establishment, that is, in premises devoted to the sale or distribution of articles, which

means an establishment which is ordinarily or daily open to customers and purchasers to carry out sales transactions." (See brief for defendant-appellee, p. 5.)

The complaint alleged, briefly, that the defendant was a domestic corporation engaged at the time of its filing, in the bottling, production, and wholesale of soft drinks, with principal offices and factory in Hato Rey, San Juan, Puerto Rico, and a sales branch in Ponce, and that the said branch was a subsidiary establishment of the manufacturing enterprise, organized in other premises and devoted to the wholesale of the soft drinks bottled in Hato Rey. That the laborers represented by the complainant worked there for the defendant; further, that those laborers were covered by Mandatory Decree No. 16 and that they failed to receive the amounts set out in the fourth allegation of the complaint, totaling $1,747.22.

The complaint alleged demand and lack of payment and prayed for judgment for the total sum of $3,494.44, that is, $1,747.22 as the difference in unpaid wages and an equal amount by way of penalty, to be apportioned among the claimant laborers, pursuant to § 25 of Act No. 8 of April 5, 1941 (Sess. Laws, p. 302), as amended by Act No. 451 of May 14, 1947 (Sess. Laws, p. 950).

The defendant admitted certain facts of the complaint, denying specifically that it had a sales branch and that it was engaged in the distribution and wholesale of soft drinks, and further denied that it owed any amount to the claimants.

The hearing of the complaint was held on October 5, 1956. At the start the parties stipulated that the question for decision was whether Mandatory Decree No. 16 or No. 5 was applicable; if the latter was applicable, then no amount was due the claimants; and that in order to determine which decree was applicable it was necessary to determine whether or not the warehouse which the defendant had in Ponce was a sales branch. It was also stipulated that the complainants

were employees of the defendant on the dates mentioned in the complaint (according to the complaint, the work was performed between January 26, 1951 and October 1, 1953); that the complainant made demand for payment to the defendant, and that the controversy was confined to determining whether or not the warehouse was a sales branch, whether the transactions were commercial or industrial, and whether Mandatory Decree No. 16 was applicable.

The oral testimony summed up by the trial court is as follows:

Fructuoso Flores Figueroa and Edelmiro Rosado, the latter in rebuttal, testified for the complainant. Both testified, briefly, that their boss in Ponce was Aurelio Guzmán Zayas; that defendant had a close warehouse where two trucks and a pickup truck could enter; that the premises were used for storing soft drinks which were afterwards sold at wholesale to merchants; that warehousing was done two or three times a week, and that the employees went out every day in the morning and returned in the afternoon, and that they had route books; that in each truck rode the chauffeur, the salesman, and the assistant; that they called on the merchants, picked up the empty boxes, and delivered filled boxes if the merchant wished them; that they did not have advanced orders nor knew beforehand how much they were going to sell; that the merchant paid directly to the salesman and all the sales were made to the merchant; that in the warehouse there were an adding machine, a file, a wastebasket, and a desk; that Guzmán was the one who paid them and prepared the payrolls, some times he paid on Thursday and others on Friday; that they do not know whether the warehouse remained open when they went out, and that they do not know further whether any commercial transactions were made in that warehouse.

Aurelio Guzmán Zayas testified for the defendant, and stated that it had a garage in Ponce where there were two

trucks and a wagon for his own use; that he was a salesman and was also in charge of the garage; that the drinks were received from San Juan in a trailer and from there they were loaded on the trucks, and the remainder was left in a space in the garage; that every morning the witness and the claimants went out to sell along the different routes, and that upon leaving he closed the warehouse and opened it in the evening to receive the trucks and put away the equipment; that he received the money from the salesmen, prepared the weekly payrolls, and paid out of that money; that at the beginning he put away the money in the warehouse, but afterwards when a theft occurred he deposited it in the bank in Ponce to be transferred to the defendant's account in the Royal Bank in Hato Rey; that he did not carry a check account; that the trailers came every other day, some times every two days, and some times he returned the money with the same trailer; that it was the practice to call on the customers every eight days; that they had no telephone nor took orders by telephone or verbally; that some times they received calls from San Juan and some times from Ponce, but very seldom; that when they went out to sell, if they could not deliver merchandise to a merchant because the merchandise on the truck had been depleted, it was necessary for him to wait one week in order to receive and deliver it.

The trial court made the following conclusions of law:

"1. In view of the evidence and the stipulations made by the parties, the court arrives at the conclusion that the defendant is a domestic corporation engaged in the bottling and sale of soft drinks in Puerto Rico, with principal offices and factory in Hato Rey, San Juan, Puerto Rico.

"2. That the complainants were working for the defendant on the date of the complaint in the instant case as salesmen and assistants in the distribution of soft drinks in the city of Ponce and surrounding towns.

"3. That the complainants sent a statement and a letter of demand for payment to the defendant through the Secretary of Labor and the defendant refused to pay the amount claimed.

"4. That the evidence in this case has established that the premises which the defendant had in Ponce were not a sales branch but just a warehouse or deposit, according to the definition contained in Article I, paragraph B, of Mandatory Decree No. 16, as construed in Interpretative Memorandum No. 8 of the Department of Labor, which was published on September 14, 1950.

"The said interpretative memorandum in its pertinent part reads:

" 'The easiest way of distinguishing between one class of sales and other classes consists in determining whether or not the sales are transacted in a commercial establishment; that is, in premises devoted to the sale or distribution of articles, which means an establishment *which is ordinarily or daily open to customers and purchasers to carry out sales transactions.'* (Italics ours.)

"5. That, for the reasons set out above, this case did not deal with a commercial establishment as defined, for the purposes thereof, in Mandatory Decree No. 16."

 As conclusion of law, the court held that Mandatory Decree No. 16 was not applicable to the case at bar because the defendant's premises in Ponce were not a commercial establishment for the wholesale of its products, and that Mandatory Decree No. 5, relative to the bottling and sale of soft drinks industry, was applicable thereto.[1]

---

[1] Decree No. 24, which took effect on August 1, 1954, removed the beer industry from the regulations of Decree No. 5 and only the soft-drink industry is covered by the latter. It is to be noted that Decree No. 24 and those mentioned below are subsequent to the facts of the case itself.

The Minimum Wage Act was approved on June 26, 1956, according to which, as alleged in appellant's brief (p. 5) "the Minimum Wage Board lost the powers which it had prior thereto to regulate the other labor

Appellant assigns two errors which are discussed jointly. He maintains that the trial court erred in holding that the defendant's business in Ponce was not a "sales branch of manufacturing enterprise," pursuant to the terms of Mandatory Decree No. 16, and in holding that the decree applicable to the case was No. 5, relative to the bottled soft drinks and beer industry.

None of the errors were committed. The evidence offered by the complainants, as summed up above, did not show that the defendant at the time of the claim maintained or operated in Ponce a "subsidiary establishment of a manufacturing enterprise which does not operate in the same building where the manufacturing processes are performed and which is engaged in the distribution at wholesale of goods produced by said manufacturing enterprise." A mere place for storing bottled soft drinks, in which the same are neither sold nor distributed, can not be considered as a "Sales Branch of a Manufacturing Enterprise," as defined in subdivision "B", Article I of Mandatory Decree No. 16.

The industry in question being a bottling and sale of soft drinks industry, the application of Mandatory Decree No. 5, which refers specifically to that industry, should prevail. See *Rodríguez v. Fonalledas*, 72 P.R.R. 49 (1951); *Cervecería India v. Municipality*, 77 P.R.R. 91 (1954); *Santana v. Blasco*, 78 P.R.R. 623 (1955).

The judgment appealed from will be affirmed.

conditions within the different industries, independently of the powers bearing on minimum wage." Decree No. 33 (October 30, 1957), which is applicable to the food and related products industry, was issued pursuant to the new Act and expressly included within its scope the manufacture of soft drinks and beverages. The manufacture of soft drinks was thus covered, as respects wages, by Decree No. 33, and, as to the other labor conditions, it continued to be regulated by Decree No. 5.

Decree No. 34, which is applicable to the wholesale and warehousing industry, also went into effect on October 30, 1957, and it fixes the wages for those industries, but the other labor conditions are still governed by Decree No. 16. Decree No. 34 comprises within its scope the sales branches of manufacturing enterprises, as did the aforesaid Decree No. 16.